O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNIVERSITY PARK, LLC, a California limited liability company; JAMES R. WATSON, an individual and doing business as WATSON & ASSOCIATES,<br><br>              Plaintiffs,<br><br>     v.<br><br>ZURICH AMERICAN INSURANCE COMPANY, a New York corporaiton; AMERICAN GUARANTEE AND LIABILTY INSURANCE COMPANY, a New York corporation; STEADFAST INSURANCE COMPANY, a Delaware corporation,<br><br>              Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. CV 11-03328 DDP (JCx)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[Docket Nos. 20, 22] |

Presently before the court are Defendants' Motion for Summary Judgment ("Motion") and Plaintiffs' Motion for Partial Summary Judgment ("Cross-Motion").  Having reviewed the parties' moving papers and heard oral argument, the court grants Defendants' Motion, denies Plaintiffs' Cross-Motion, and adopts the following Order.

# I.    BACKGROUND

At all times relevant to this action, Plaintiffs University Park and James R. Watson (collectively, "UP") owned certain real property in San Bernardino, California ("Property").  In 2006 and 2007, UP entered into sale and purchase agreements for the Property with Toll Bros, Inc. ("Toll").  UP agreed to deliver the Property to Toll in a "finished lot condition."  In 2004, UP contracted Mesa Contracting Corporation ("Mesa") to perform certain grading work on the Property.  Defendants Zurich American Insurance Company, American Guarantee and Liability Insurance Company, and Steadfast Insurance Company (collectively, "Defendants") issued general liability policies to Mesa, covering UP as an additional insured. The policies provide that Defendants "will pay those sums that the insured becomes legally obligated to pay as 'damages' because of . . . 'property damage' to which this insurance applies."  Relevant here, property damage is limited to: "[p]hysical injury to tangible property, including all resulting loss of use of that property," or "[l]oss of use of tangible property that is not physically injured."  (Statement of Stipulated Facts ("SSF") ¶¶ 3-12, 44-61.)

Following an inspection in 2008, Toll refused to close escrow, claiming that the Property was in unfinished condition because of construction defects - including improper grading by Mesa.  UP then sued Toll for breach of contract, and Toll cross-complained against UP, ultimately alleging breach of contract, fraud, negligent misrepresentation, foreclosure, and rescission.  As relief, Toll requested rescission of the purchase agreement, return of its $1.5 million deposit, and $3.1 million compensation for its development costs associated with the Property - including, according to UP,

1    the "diligence expenses that ultimately discovered the existence"

2    of the physical defects.  (SSF ¶¶ 14-26; Reply in Supp. of Cross-

3    Mot. at 6.)

4         In 2009, UP first tendered the defense and indemnity of the

5    Toll claims to Defendants.[1]  Defendants failed to respond to this

6    and subsequent tenders by UP, until after UP filed this action

7    against them in 2011.  Defendants then denied UP's tenders and now

8    move for summary judgment on the grounds that Toll's claims were

9    for economic loss, not property damage.  (SSF ¶¶ 27, 37-38, 41.)

10   **II.  LEGAL STANDARD**

11        Summary judgment is appropriate where "the movant shows that

12   there is no genuine dispute as to any material fact and the movant

13   is entitled to a judgment as a matter of law."  Fed. R. Civ. P.

14   56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

15   In deciding a motion for summary judgment, the evidence is viewed

16   in the light most favorable to the non-moving party, and all

17   justifiable inferences are drawn in its favor.  Anderson v. Liberty

18   Lobby, Inc., 477 U.S. 242, 255 (1986).

19        California law governs the claims at issue in this diversity

20   case.  See Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d

21

22        [1]  In 2009, UP also filed a cross-complaint against Mesa and
     others companies, based on the defective grading and construction
23   defects.  (SSF ¶ 28; Mot. at 5.)  Mesa and the other companies, in
     turn, filed a cross-complaint against UP and others for indemnity,
24   contribution, and declaratory relief.  (SSF ¶ 29.)  In their
     Motion, Defendants contend that they have no duty to defend or
25   indemnify UP for these claims, because the "claims merely seek a
     reduction or elimination of any amount adjudged to be owed" by Mesa
26   and the other companies for damage to UP's Property.  (Mot. at 16.)
     UP does not provide any response to Defendants' contention.  The
27   court therefore finds that there is no genuine dispute of material
     fact, and that Defendants are entitled to judgment as a matter of
28   law, as to these claims.

3

1025, 1031 (9th Cir. 2008).  Under California law, an insurer "owes
a broad duty to defend its insured against claims that create a
potential for indemnity."  Montrose Chem. Corp. v. Super. Ct. of
L.A. County, 6 Cal. 4th 287, 295 (1993); see also Anthem Elec.,
Inc. v. Pac. Employers Ins. Co., 302 F.3d 1049, 1054 (9th Cir.
2002) ("Any doubt as to whether the facts establish the existence
of the defense duty must be resolved in the insured's favor.").
Summary judgment can often resolve whether an insurer has a duty to
defend.  See Butler v. Clarendon Am. Ins. Co., 494 F. Supp. 2d
1112, 1122 (N.D. Cal. 2007).  But "insurers have a heavy burden
when seeking summary judgment on the duty to defend," because they
"must conclusively show that the underlying claims cannot fall
within policy coverage."  Anthem, 302 F.3d at 1056, 1060.

**III. DISCUSSION**

The parties here dispute only a single legal issue as to
potential coverage that would trigger the duty to defend: whether
Toll's claims were for damages because of property damage - i.e.
physical injury to tangible property.  Generally, under California
law, economic loss and damage to intangible property rights are not
covered property damage.  See, e.g., Giddings v. Indus. Indem. Co.,
112 Cal. App. 3d 213, 219 (1980) ("Strictly economic losses like
lost profits, loss of goodwill, loss of the anticipated benefit of
a bargain, and loss of an investment, do not constitute damage or
injury to tangible property covered by a comprehensive general
liability policy.").

Defendants therefore argue that there was no potential for
coverage here, because Toll's suit was for damages to its
intangible property right to purchase the finished Property from

4

1  UP.   As Defendants note, Toll could not have sued UP for any
2  physical injury to UP's own property.   Rather, Toll could only sue
3  for the economic losses to its contractual right to purchase the
4  Property.   UP argues, to the contrary, that regardless of the exact
5  form of Toll's claims, the claims only arise because of the
6  physical injury caused by Mesa's defective grading.   In other
7  words: but for the property damage, Toll would have no claims
8  against UP.   Both parties also provide relevant California
9  decisions in support of their respective positions.   Although no
10  case is exactly on point, the court concludes that the weight of
11  the authority precludes coverage as a matter of a law, and that
12  Defendants are therefore entitled to summary judgment.

13      Most persuasive, Defendants cite to the California Supreme
14  Court's decision in <u>Kazi v. State Farm Fire & Casualty Co.</u>, 24 Cal.
15  4th 871 (2001).   There, the insureds had been sued for impeding on
16  their neighbors' easement, through grading they had done on their
17  own property.   <u>See id.</u> at 875.   The Court found that there was no
18  potential coverage under similar policy provisions, because the
19  suit sought damages to the neighbors' easement - an intangible
20  property right "akin to goodwill, an anticipated benefit of a
21  bargain, or an investment."   <u>Id.</u> at 880.   As Defendants argue here,
22  the Court held that the arguable physical injury to the insureds'
23  own property through grading did not "change the character" of the
24  intangible easement right at issue.   <u>Id.</u> at 883-84.   The Court also
25  emphasized that the neighbors could not have sued for any damages
26  to the property, since it was owned by the insureds.   <u>See id.</u> at
27  884.   In short, even though the suit was precipitated by - and
28  would not have happened but for - physical grading, the Court

1  instead focused on the nature of the right being asserted - the
2  intangible easement right - in denying coverage.  Defendants
3  therefore ask this court to apply the same analysis here.

4      UP, however, argues that this action is controlled not by
5  Kazi, but by the California Supreme Court's earlier decision in AIU
6  Insurance Co. v. Superior Court, 51 Cal. 3d 807 (1990).  In AIU,
7  government agencies had sued the insured for contaminating the
8  environment with hazardous waste.  See id. at 815.  The agencies
9  sought "reimbursement of response costs and the costs of injunctive
10 relief" - including "their costs of investigating, monitoring, and
11 initiating cleanup of [the] hazardous waste."  Id. at 816, 842.
12 Interpreting policy provisions similar to those here, the court
13 held that: 1) the agencies were seeking damages because of property
14 damage, since "the event precipitating the[] legal action [was]
15 contamination of property"; 2) it was irrelevant whether the
16 damages and cleanup took place on the insured's own property; and
17 3) all of "the agencies' expenses for responding" were covered, not
18 just those "attributable to actual cleanup, mitigation of damage,
19 or investigation and monitoring."  Id. at 830, 843.  UP argues that
20 the analysis is the same here: 1) the precipitating event was the
21 defective grading; 2) it does not matter that UP owned the property
22 that was damaged; and 3) it is immaterial that Toll sought
23 compensation for purely economic losses, since Toll also sought
24 costs related to the property damage - i.e. the diligence expenses
25 that discovered the defective grading.

26     As Defendants correctly note, however, AIU is distinguishable
27 from and reconcilable with Kazi, because the damages sought by the
28 agencies in AIU were substantially related to the alleged property

1  damage.  See Nat'l Union Fire Ins. Co. v. Ready Pac Foods, Inc.,

2  782 F. Supp. 2d 1047, 1055 ("[L]oss from damage to intangibles is

3  recoverable only to the extent that it provides a measure of

4  damages to physical property which is within the policy's

5  coverage." (emphasis added) (citing Geddes & Smith, Inc. v. St.

6  Paul Mercury Indem. Co., 63 Cal. 2d 602 (1965)).  Again, in AIU,

7  the agencies were suing for response costs, including for cleanup,

8  investigation, and monitoring.  The amount of damages sought was

9  therefore quantitatively tied to the extent of the environmental

10 contamination.  Here, to the contrary, Toll sought rescission of

11 the purchase agreement, return of its deposit, and compensation for

12 development costs - none of which were a measure of the physical

13 damage due to defective grading.  Instead, the requested relief was

14 quantitatively tied to Toll's intangible contractual rights.  Thus,

15 this case is like Kazi, where the requested damages were connected

16 to the value of the easement, not the amount of any property damage

17 due to grading.

18     Finally, that Toll's development costs may have included its

19 costs to inspect the condition of the Property prior to closing, as

20 UP contends, does not change the analysis.  Toll would presumably

21 have incurred these diligence expenses whether or not there had

22 been any property damage.  Further, even if the inspection costs

23 increased somewhat due to the defective grading, this minor

24 connection would fall well short of the relation between the

25 response costs sought and physical injury caused in AIU.[2]

26

27     [2] UP also asks the court to distinguish Kazi because of its
   focus on easements.  However, the alleged contractual right to
28 purchase asserted by Toll here is equally intangible, and therefore
                                              (continued...)

**IV.    CONCLUSION**

   For the foregoing reasons, the court GRANTS Defendants' Motion for Summary Judgment, and DENIES Plaintiffs' Cross-Motion.

IT IS SO ORDERED.

Dated: March 22, 2012

                                   DEAN D. PREGERSON
                                   United States District Judge

---

[2](...continued)
legally indistinguishable.