O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED PARK, LLC, a California limited liability company; JAMES R. WATSON, an individual and doing business as WATSON & ASSOCIATES,<br><br>    Plaintiffs,<br><br>    v.<br><br>ZURICH AMERICAN INSURANCE COMPANY, a New York corporaiton; AMERICAN GUARANTEE AND LIABILTY INSURANCE COMPANY, a New York corporation; STEADFAST INSURANCE COMPANY, a Delaware corporation,<br><br>    Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. CV 11-03328 DDP (JCx)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br><br>[Docket Nos. 20, 22] |

Presently before the court are Defendants' Motion for Summary Judgment ("Motion") and Plaintiffs' Motion for Partial Summary Judgment ("Cross-Motion"). Having reviewed the parties' moving papers and heard oral argument, the court grants Defendants' Motion, denies Plaintiffs' Cross-Motion, and adopts the following Order.

## I. BACKGROUND

At all times relevant to this action, Plaintiffs University Park and James R. Watson (collectively, "UP") owned certain real property in San Bernardino, California ("Property"). In 2006 and 2007, UP entered into sale and purchase agreements for the Property with Toll Bros, Inc. ("Toll"). UP agreed to deliver the Property to Toll in a "finished lot condition." In 2004, UP contracted Mesa Contracting Corporation ("Mesa") to perform certain grading work on the Property. Defendants Zurich American Insurance Company, American Guarantee and Liability Insurance Company, and Steadfast Insurance Company (collectively, "Defendants") issued general liability policies to Mesa, covering UP as an additional insured. The policies provide that Defendants "will pay those sums that the insured becomes legally obligated to pay as 'damages' because of . . . 'property damage' to which this insurance applies." Relevant here, property damage is limited to: "[p]hysical injury to tangible property, including all resulting loss of use of that property," or "[l]oss of use of tangible property that is not physically injured." (Statement of Stipulated Facts ("SSF") ¶¶ 3-12, 44-61.)

Following an inspection in 2008, Toll refused to close escrow, claiming that the Property was in unfinished condition because of construction defects - including improper grading by Mesa. UP then sued Toll for breach of contract, and Toll cross-complained against UP, ultimately alleging breach of contract, fraud, negligent misrepresentation, foreclosure, and rescission. As relief, Toll requested rescission of the purchase agreement, return of its $1.5 million deposit, and $3.1 million compensation for its development costs associated with the Property - including, according to UP,

the "diligence expenses that ultimately discovered the existence" of the physical defects. (SSF ¶¶ 14-26; Reply in Supp. of Cross-Mot. at 6.)

In 2009, UP first tendered the defense and indemnity of the Toll claims to Defendants.[1] Defendants failed to respond to this and subsequent tenders by UP, until after UP filed this action against them in 2011. Defendants then denied UP's tenders and now move for summary judgment on the grounds that Toll's claims were for economic loss, not property damage. (SSF ¶¶ 27, 37-38, 41.)

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). In deciding a motion for summary judgment, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are drawn in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

California law governs the claims at issue in this diversity case. See Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d

---

[1] In 2009, UP also filed a cross-complaint against Mesa and others companies, based on the defective grading and construction defects. (SSF ¶ 28; Mot. at 5.) Mesa and the other companies, in turn, filed a cross-complaint against UP and others for indemnity, contribution, and declaratory relief. (SSF ¶ 29.) In their Motion, Defendants contend that they have no duty to defend or indemnify UP for these claims, because the "claims merely seek a reduction or elimination of any amount adjudged to be owed" by Mesa and the other companies for damage to UP's Property. (Mot. at 16.) UP does not provide any response to Defendants' contention. The court therefore finds that there is no genuine dispute of material fact, and that Defendants are entitled to judgment as a matter of law, as to these claims.

3

1025, 1031 (9th Cir. 2008).  Under California law, an insurer "owes a broad duty to defend its insured against claims that create a potential for indemnity."  <u>Montrose Chem. Corp. v. Super. Ct. of L.A. County</u>, 6 Cal. 4th 287, 295 (1993); <u>see also</u> <u>Anthem Elec., Inc. v. Pac. Employers Ins. Co.</u>, 302 F.3d 1049, 1054 (9th Cir. 2002) ("Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor.").  Summary judgment can often resolve whether an insurer has a duty to defend.  <u>See</u> <u>Butler v. Clarendon Am. Ins. Co.</u>, 494 F. Supp. 2d 1112, 1122 (N.D. Cal. 2007).  But "insurers have a heavy burden when seeking summary judgment on the duty to defend," because they "must conclusively show that the underlying claims <u>cannot</u> fall within policy coverage."  <u>Anthem</u>, 302 F.3d at 1056, 1060.

**III. DISCUSSION**

The parties here dispute only a single legal issue as to potential coverage that would trigger the duty to defend: whether Toll's claims were for damages <u>because of property damage</u> - i.e. physical injury to tangible property.  Generally, under California law, economic loss and damage to intangible property rights are not covered property damage.  <u>See, e.g.</u>, <u>Giddings v. Indus. Indem. Co.</u>, 112 Cal. App. 3d 213, 219 (1980) ("Strictly economic losses like lost profits, loss of goodwill, loss of the anticipated benefit of a bargain, and loss of an investment, do not constitute damage or injury to tangible property covered by a comprehensive general liability policy.").

Defendants therefore argue that there was no potential for coverage here, because Toll's suit was for damages to its intangible property right to purchase the finished Property from

4

UP.  As Defendants note, Toll could not have sued UP for any physical injury to UP's own property.  Rather, Toll could only sue for the economic losses to its contractual right to purchase the Property.  UP argues, to the contrary, that regardless of the exact form of Toll's claims, the claims only arise because of the physical injury caused by Mesa's defective grading.  In other words: but for the property damage, Toll would have no claims against UP.  Both parties also provide relevant California decisions in support of their respective positions.  Although no case is exactly on point, the court concludes that the weight of the authority precludes coverage as a matter of a law, and that Defendants are therefore entitled to summary judgment.

Most persuasive, Defendants cite to the California Supreme Court's decision in <u>Kazi v. State Farm Fire & Casualty Co.</u>, 24 Cal. 4th 871 (2001).  There, the insureds had been sued for impeding on their neighbors' easement, through grading they had done on their own property.  <u>See id.</u> at 875.  The Court found that there was no potential coverage under similar policy provisions, because the suit sought damages to the neighbors' easement - an intangible property right "akin to goodwill, an anticipated benefit of a bargain, or an investment."  <u>Id.</u> at 880.  As Defendants argue here, the Court held that the arguable physical injury to the insureds' own property through grading did not "change the character" of the intangible easement right at issue.  <u>Id.</u> at 883-84.  The Court also emphasized that the neighbors could not have sued for any damages to the property, since it was owned by the insureds.  <u>See id.</u> at 884.  In short, even though the suit was precipitated by - and would not have happened but for - physical grading, the Court

instead focused on the nature of the right being asserted - the intangible easement right - in denying coverage.  Defendants therefore ask this court to apply the same analysis here.

UP, however, argues that this action is controlled not by Kazi, but by the California Supreme Court's earlier decision in AIU Insurance Co. v. Superior Court, 51 Cal. 3d 807 (1990).  In AIU, government agencies had sued the insured for contaminating the environment with hazardous waste.  See id. at 815.  The agencies sought "reimbursement of response costs and the costs of injunctive relief" - including "their costs of investigating, monitoring, and initiating cleanup of [the] hazardous waste."  Id. at 816, 842. Interpreting policy provisions similar to those here, the court held that: 1) the agencies were seeking damages because of property damage, since "the event precipitating the[] legal action [was] contamination of property"; 2) it was irrelevant whether the damages and cleanup took place on the insured's own property; and 3) all of "the agencies' expenses for responding" were covered, not just those "attributable to actual cleanup, mitigation of damage, or investigation and monitoring."  Id. at 830, 843.  UP argues that the analysis is the same here: 1) the precipitating event was the defective grading; 2) it does not matter that UP owned the property that was damaged; and 3) it is immaterial that Toll sought compensation for purely economic losses, since Toll also sought costs related to the property damage - i.e. the diligence expenses that discovered the defective grading.

As Defendants correctly note, however, AIU is distinguishable from and reconcilable with Kazi, because the damages sought by the agencies in AIU were substantially related to the alleged property

6

damage. See Nat'l Union Fire Ins. Co. v. Ready Pac Foods, Inc., 782 F. Supp. 2d 1047, 1055 ("[L]oss from damage to intangibles is recoverable only to the extent that it provides <u>a measure of damages</u> to physical property which is within the policy's coverage." (emphasis added) (citing Geddes & Smith, Inc. v. St. Paul Mercury Indem. Co., 63 Cal. 2d 602 (1965)). Again, in AIU, the agencies were suing for response costs, including for cleanup, investigation, and monitoring. The amount of damages sought was therefore quantitatively tied to the extent of the environmental contamination. Here, to the contrary, Toll sought rescission of the purchase agreement, return of its deposit, and compensation for development costs - none of which were a measure of the physical damage due to defective grading. Instead, the requested relief was quantitatively tied to Toll's intangible contractual rights. Thus, this case is like Kazi, where the requested damages were connected to the value of the easement, not the amount of any property damage due to grading.

    Finally, that Toll's development costs may have included its costs to inspect the condition of the Property prior to closing, as UP contends, does not change the analysis. Toll would presumably have incurred these diligence expenses whether or not there had been any property damage. Further, even if the inspection costs increased somewhat due to the defective grading, this minor connection would fall well short of the relation between the response costs sought and physical injury caused in AIU.[2]

---

[2] UP also asks the court to distinguish Kazi because of its focus on easements. However, the alleged contractual right to purchase asserted by Toll here is equally intangible, and therefore
(continued...)

7

**IV. CONCLUSION**

For the foregoing reasons, the court GRANTS Defendants' Motion for Summary Judgment, and DENIES Plaintiffs' Cross-Motion.

IT IS SO ORDERED.

Dated: March 22, 2012

DEAN D. PREGERSON
United States District Judge

---

[2](...continued)
legally indistinguishable.